OPINION
{¶ 1} Defendant-Appellant, Rachelle Smith ("Rachelle"), appeals two Allen County Juvenile Court judgments, granting Allen County Children's Services Board ("ACCSB") permanent custody of Ashton Smith ("Ashton") and Devin Hershberger ("Devin"). On appeal, Rachelle contends that the juvenile court failed to make a complete finding on the issue of the children's best interests and that the juvenile court decision to grant permanent custody to ACCSB was not supported by clear and convincing evidence. Based on the following, the judgment of the trial court is affirmed.
 {¶ 2} In April of 2001, Rachelle's four children, Ashton, Devin, Zachary and Austin were removed from her home. Ashton was born on May 27, 2000; Devin was born June 21, 1996. At the time of their removal, Ashton was eleven months old and Devin was almost five years old. The children were initially removed from Rachelle's home based on Ashton being hospitalized for non-organic failure to thrive syndrome and unsuitable home conditions. Prior, Ashton's siblings had also been diagnosed with failure to thrive syndrome as well. Subsequently, in August of 2001, both Ashton and Devin were adjudicated to be dependant children and ACCSB was granted temporary custody.
 {¶ 3} In May of 2001, following the initial removal, case plans were filed by ACCSB. The case plans listed the following family strengths:
1. No reports of inflicted injury.
 2. Family has adequate economic resources
 3. Adequacy of medical care.
The case plans listed the following family concerns:
1. Age of child and inability to protect self.
 2. Rochelle (sic.) and Donald's parenting skills.
 3. History of assaultive behavior.
 {¶ 4} To comply with the case plans, Rachelle and Donald were required to maintain a stable home, which was clean and clear of any hazards, and to maintain an adequate level of income or utilize community resources to provide for the children's basic needs. Rachelle and Donald were also required to eliminate the risks to the children, by successfully completing and utilizing skills and knowledge obtained in parenting classes. Additionally, Rachelle and Donald were required to cease all assaultive behavior and to keep questionable people out of the home. Finally, each was to attend counseling and follow through with all of the counselor's recommendations.
 {¶ 5} In August of 2002, an amended case plan was filled in Ashton's case. The amended case plan included the following additional family concern:
Parents have completed psychological evaluations which reflects thechild should not return to the parents. Due to the age of the child thereis an inability to protect self. The child is in need of permanency.
 {¶ 6} At the time of the children's removal, Rachelle was estranged from Donald. Subsequently, the two made various attempts to reconcile in order to regain custody of their children. However, the two ultimately parted ways in June of 2002. At that time, Donald's case plan performance began to improve, while Rachelle's performance declined.
 {¶ 7} From June of 2002 through March of 2003, Rachelle's performance continued to decline. During this time, Rachelle was transient. She had traveled to Las Vegas for over a month with a truck driver, failing to inform either ACCSB or any other member of her family. Additionally, Rachelle's involvement in a domestic violence situation resulted in her spending seventeen days in jail. She was involved in an incident where her brother kicked her and beat her up. Finally, around the end of 2002, Rachelle developed head lice, which took quite some time to remedy. As a result of these incidents, Rachelle missed several visits with her children.
 {¶ 8} Rachelle did complete her psychological examination; however, she failed to follow through with her counseling. And, finally, while Rachelle did complete parenting classes, ACCSB workers testified that her parenting skills had not improved. During her visits, Rachelle required intense supervision and the case workers stated they did not know how long it would take Rachelle to properly handle her children.
 {¶ 9} In March of 2003, ACCSB filed a motion for permanent custody. On April 30, 2003 and July 16, 2003, the juvenile court held hearings on the matter. Following the hearing, the juvenile court found that Rachelle had failed to bond with both Devin and Ashton and that all four of her children had been diagnosed with failure to thrive syndrome. Additionally, the juvenile court found that while Rachelle had acquired adequate and stable housing at the time of the hearing, she had not done so until after the filing of ACCSB's motion for permanent custody. The juvenile court went on to find that Rachelle was currently living with Leroy Zimmerman, who Rachelle knew to be a felon whose children had been removed from his home by a children's service agency. The juvenile court noted that Rachelle had failed to visit her children eighteen of thirty-nine visitation opportunities and that many of her visits were missed when she left the state with the truck driver and failed to inform ACCSB that she had left the state.
 {¶ 10} The juvenile court also relied upon the testimony of both Dr. David K. Connell, a clinical and forensic psychologist, and the deposition of Dr. Frederick P. Ferri, a counseling and forensic psychologist. Both Connell and Ferri had evaluated Rachelle and concurred in the conclusion that she lacked the psychological, emotional and intellectual qualities that would allow her to adequately parent her children. The juvenile court also specifically noted the following:
Dr. Connell further states that in his opinion, for the mother tochange her life in any significant way, she would be required tosuccessfully complete a course of therapy which would take up to twoyears for completion, and that it would be very difficult for her tocomplete this therapy because of her borderline intellectualfunctioning. Dr. Connell further says without therapy [Rachelle's] life,and the lives of her children, will in the future resemble their lives inthe past: chaotic, unstable and abusive.
 {¶ 11} Finally, the juvenile court found that the children had adjusted well to life in the foster care and are thriving in that environment; that the children had been in the temporary custody of ACCSB for twelve or more consecutive months of the last twenty-two months; that the children's need for legally secure permanent placement cannot be achieved without a grant of permanent custody; and, that Guardian Ad Litem, Joseph Benavidez, recommended that granting permanent custody was in the children's best interests.
 {¶ 12} Accordingly, the juvenile court concluded, in two separate judgment entries, that, after considering all the relevant evidence, it was in the best interest of the children to award permanent custody to ACCSB. It is from these judgments Rachelle appeals. The judgments have been consolidated for the purposes of this appeal, and we are presented with the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED WHEN IT FAILED TO COMPLY WITH OHIO REVISED CODESECTION 2151.414(D)(1-5) BY FAILING TO MAKE A COMPLETE FINDING WITHRESPECT TO THE BEST INTEREST OF THE CHILDREN
 Assignment of Error No. II The trial court decision to grant permanent custody to the Allen CountyChildren Services Board was not supported by clear and convincingevidence
 {¶ 13} Due to the nature of appellant's claims, we will be addressing the assignments of error out of order.
 Assignment of Error No. II {¶ 14} In the second assignment of error, Rachelle asserts that the juvenile court erred in finding that there was clear and convincing evidence that awarding permanent custody to ACCSB was in the children's best interest. Specifically, Rachelle argues that she complied with the required case plan, undergoing psychological evaluations, attending parenting classes and regularly visiting her children. Additionally, she asserts that at the time of the permanent custody hearing she had maintained stable housing and employment. Finally, Rachelle argues that the children could have been provided permanency by being placed in her custody.
 {¶ 15} We begin our review of this issue by noting that "[i]t is well recognized that the right to raise a child is an `essential' and `basic civil right.'" In re Hayes (1997), 79 Ohio St.3d 46, 48, citing In reMurray (1990), 52 Ohio St.3d 155, 157. Thus, "a parent's right to the custody of his or her child has been deemed `paramount'" when the parent is a suitable person. Id. (citations omitted). Because a parent has a fundamental liberty interest in the custody of his or her child, this important legal right is "protected by law and, thus, comes within the purview of a `substantial right[.]'" Id. Based upon these principles, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." Id. (citations omitted). Thus, it is within these constructs that we now examine the assignment of error.
 {¶ 16} Once a child has been placed in the temporary custody of a children's services agency, the agency is required to prepare and maintain a case plan for that child. R.C. 2151.412(A)(2). Further, R.C.2151.412(E)(1) states that "[a]ll parties, including the parents * * * are bound by the terms of the journalized case plan." One of the enumerated goals of a case plan for a child in the temporary custody of a children's services agency is "[t]o eliminate with all due speed the need for the out-of-home placement so that the child can safely return home." R.C. 2151.412(F)(1)(b). This goal is commonly referred to as reunification.
 {¶ 17} However, once an agency files a motion for permanent custody, the Revised Code requires that the trial court determine, by clear and convincing evidence, that a grant of permanent custody to the moving agency is in the best interest of the child and that one of four enumerated factors applies. R.C. 2151.414(B)(1). Included in this list is that
The child has been in the temporary custody of one or more publicchildren service agencies or private child placing agencies for twelve ormore of a consecutive twenty-two month period * * *. R.C.2151.414(B)(1)(d).
 {¶ 18} The Supreme Court of Ohio has held that "[c]lear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Cross v. Ledford (1954), 161 Ohio St. 469, 477, citing Merrick v. Ditzler (1915), 91 Ohio St. 256. In addition, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Cross, 161 Ohio St. at 477. (citations omitted). Thus, we are required to determine whether the evidence was sufficient for the trial court to make its findings by a clear and convincing degree of proof.
 {¶ 19} In the case sub judice, Rachelle contends that the juvenile court erred in finding that there was clear and convincing evidence that awarding permanent custody to ACCSB was in the children's best interest. Specifically, Rachelle argues that her compliance with the case plan and her stability at the time of the permanency hearing are sufficient to prove that the children should have been returned to her custody.
 {¶ 20} In making a determination of the best interests of the child at a permanent custody hearing, "the court shall consider all relevant factors, including, but not limited to, * * *: (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers * * *, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem * * *; (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty two month period * * *; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 21} As noted above, the juvenile court considered several things in making its decision to grant ACCSB permanent custody of the children. Specifically, the juvenile court considered Rachelle's failure to bond with either Devin or Ashton as well as the fact that all of Rachelle's children had been diagnosed with failure to thrive syndrome. The court also noted that the children had adjusted well in foster care. Next, the juvenile court considered the custodial history of both Devin and Ashton, noting that the children had been in the temporary custody of ACCSB for more than twelve of the last twenty-two consecutive months. Additionally, the juvenile court discussed the children's need for legally secure permanent custody.
 {¶ 22} The juvenile court also noted that that while Rachelle did currently have stable housing, she had not done so until after the filing of ACCSB's motion for permanent custody. The juvenile court considered Rachelle's involvement with and living with a known felon who had also had his children removed from his custody by a children's services agency. The juvenile court also considered Rachelle's visitation history as well as her reasons for missing visits and her failure to contact ACCSB when she did miss visits. And, finally, the juvenile court relied heavily upon Rachelle's psychological evaluations and the recommendations of both Dr. Ferri and Dr. Connell that Rachelle was not presently able to adequately parent.
 {¶ 23} Upon review of the entire record, we find that the juvenile court's findings are supported by clear and convincing evidence and were properly considered under R.C. 2151.414(D). It is clear from the juvenile court's judgment entry that it relied heavily upon Rachelle and the children's history, the results of her two psychological examinations as well as the children's need for legally secure permanent custody. Regardless of Rachelle's progress, which was acknowledged by both the juvenile court as well as the report of the guardian ad litem, there remained serious doubts about her ability to adequately parent her children. Additionally, after being in temporary custody of ACCSB for over two years, these children were in dire need of permanent placement. The court's reliance upon her history of parenting, the two concurring psychological opinions, which both held serious reservations about Rachelle's ability to parent, and the children's need for permanent custody, was proper under R.C. 2151.414(D). Again, all of the findings made by the court are supported by the record. Furthermore, all of the findings support the juvenile court's finding that it was in the best interests of the children to be placed in the permanent custody of ACCSB.
 {¶ 24} Accordingly, the second assignment of error is overruled.
 Assignment of Error No. I {¶ 25} In the first assignment of error, Rachelle contends that the trial court failed to comply with R.C. 2151.414(D). Essentially, Rachelle argues that the juvenile court erred because its judgment entry failed to include any specific written findings that it considered the factors under R.C. 2151.414(D)(5).
 {¶ 26} As noted above, R.C. 2151.414(D) provides that:
In determining the best interests of a child * * * the court shallconsider all relevant factors, including, but not limited to thefollowing:
 (1) The interaction and interrelationship of the child with the child'sparents, siblings, relatives, foster caregivers and out-ofhome providers,and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child orthrough the child's guardian ad litem, with due regard for the maturityof the child;
 (3) The custodial history of the child, including whether the child hasbeen in the temporary custody of one or more public children servicesagencies or private child placing agencies for twelve or more months of aconsecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement andwhether that type of placement can be achieved without a grant ofpermanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of thissection apply in relation to the parents and child.
Additionally, R.C. 2151.414(E)(7-11) provides:
(7) The parent has been convicted of or pleaded guilty to one of thefollowing:
 (a) An offense under section 2903.01, 2903.02, or 2903.03 of theRevised Code or under an existing or former law of this state, any otherstate, or the United States that is substantially equivalent to anoffense described in those sections and the victim of the offense was asibling of the child or the victim was another child who lived in theparent's household at the time of the offense;
 (b) An offense under section 2903.11, 2903.12, or 2903.13 of theRevised Code or under an existing or former law of this state, any otherstate, or the United States that is substantially equivalent to anoffense described in those sections and the victim of the offense is thechild, a sibling of the child, or another child who lived in the parent'shousehold at the time of the offense;
 (c) An offense under division (B)(2) of section 2919.22 of the RevisedCode or under an existing or former law of this state, any other state,or the United States that is substantially equivalent to the offensedescribed in that section and the child, a sibling of the child, oranother child who lived in the parent's household at the time of theoffense is the victim of the offense;
 (d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or2907.06 of the Revised Code or under an existing or former law of thisstate, any other state, or the United States that is substantiallyequivalent to an offense described in those sections and the victim ofthe offense is the child, a sibling of the child, or another child wholived in the parent's household at the time of the offense;
 (e) A conspiracy or attempt to commit, or complicity in committing, anoffense described in division (E)(7)(a) or (d) of this section.
 (8) The parent has repeatedly withheld medical treatment or food fromthe child when the parent has the means to provide the treatment orfood, and, in the case of withheld medical treatment, the parent withheldit for a purpose other than to treat the physical or mental illness ordefect of the child by spiritual means through prayer alone in accordancewith the tenets of a recognized religious body.
 (9) The parent has placed the child at substantial risk of harm two ormore times due to alcohol or drug abuse and has rejected treatment two ormore times or refused to participate in further treatment two or moretimes after a case plan issued pursuant to section 2151.412 of theRevised Code requiring treatment of the parent was journalized as part ofa dispositional order issued with respect to the child or an order wasissued by any other court requiring treatment of the parent.
 (10) The parent has abandoned the child.
 (11) The parent has had parental rights involuntarily terminatedpursuant to this section or section 2151.353 or 2151.415 of the RevisedCode with respect to a sibling of the child.
 {¶ 27} On appeal, Rachelle contends that the juvenile court's judgment entry does not indicate that any consideration was given to the factors identified in R.C. 2151.414(E)(7-11), which the juvenile court was required to consider pursuant to R.C. 2151.414(D)(5). Additionally, Rachelle asserts that the juvenile court's failure to specifically indicate that it considered these factors is prejudicial error.
 {¶ 28} Rachelle correctly asserts that the Eleventh District Court of Appeals has read the language R.C. 2151.414(D) in a way that requires a juvenile court to discuss each of the factors set forth under the best interest test. See In the Matter of Nicole Smith, 11th Dist. No. 2002-A-0098, 2003-Ohio-800, ¶ 13. While we agree that a juvenile court is required to consider all of the enumerated factors pursuant to R.C.2151.414(D), we will not go so far as to adopt the Eleventh District Court of Appeals requirement that each factor must be specifically discussed in the judgment entry. There must be some indication on the record that all of the factors in R.C. 2151.414(D) were considered; however, we will not require a juvenile court to utter any magic or talismanic wording to pass statutory muster.
 {¶ 29} In the case sub judice, it is clear from the juvenile court's judgment entry and the record that the court did properly consider all of the R.C. 2151.414(D) factors. Nevertheless, even if we were to find that the juvenile court did commit error by failing to include a specific discussion of R.C. 2151.414(D)(5), we cannot say that such an error would be prejudicial. Upon review of the statutory factors pursuant to R.C.2151.414(E)(7-11) as well as the record, we cannot say the juvenile court erred in failing to include a specific discussion of those factors in its judgment entry.
 {¶ 30} As noted above, R.C. 2151.414(E)(7-11) deal with such things as a parents prior conviction for certain enumerated crimes, a parent's repeated withholding of medical treatment or food, a parent's placing a child at substantial risk of harm due to alcohol or drug abuse, a parent's abandoning a child or a parent's parental rights previously being terminated for a child's siblings. Upon review of the record, we cannot say that any of these factors apply to Rachelle's case. Accordingly, we cannot find that any harm committed by the juvenile court's failure to include such factors would be prejudicial.
 {¶ 31} Having found that the juvenile court was not required to include a specific written discussion of the R.C. 2151.414(E)(7-11) factors because they were inapplicable to appellant's case, we cannot say the trial court erred in failing to include such a discussion. Additionally, based on our discussion of the second assignment of error, the findings made by the juvenile court in granting ACCSB permanent custody are supported by the record and, furthermore, were properly considered under R.C. 2151.414(D). Accordingly, the second assignment of error is overruled.
 {¶ 32} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments affirmed.
 Cupp, P.J., and Shaw, J., concur.