OPINION
{¶ 1} Appellant-mother Misty McDonald appeals the August 1, 2006 Judgment Entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, which terminated her parental rights, responsibilities and obligations with respect to her three sons, Joseph, Taylor, and Sean Turner, and granted permanent custody of the boys to appellee Tuscarawas Job Family Services("TCJFS").
 STATEMENT OF THE CASE AND FACTS {¶ 2} The instant appeal concerns the children of appellant, Misty McDonald: Joseph [age 8], Taylor [age 7], and Sean [age 3] Turner. The father of Joseph Turner is Joseph McDonald. (T. at 80). The father of Taylor Turner is Timothy McDonald, who is also the full brother of Joseph McDonald. (T. at 80). The father of Sean Turner is Floyd Burge, who is a half brother to both Joseph and Timothy McDonald. (T. at 80).
 {¶ 3} Prior to the involvement of TCJFS the appellant had an extensive history with children's service agencies in several Ohio counties, as well as in West Virginia. (T. at 85; 141). TCJFS became involved with the family upon receiving reports that appellant was homeless and unable to adequately provide for her children. (T. at 85). There were concerns regarding appellant's lack of housing, her ability to adequately provide for her children, and concerns regarding medical and educational neglect of the children. The children were removed and placed into foster care on April 26, 2005. (T. at 79).
 {¶ 4} A case plan was adopted for the benefit of the parents. The case plan for appellant required her to complete parent education classes, a psychological evaluation, follow all recommendations for treatment, and to provide adequate housing and income for the family. (T. at 81).
 {¶ 5} The fathers of the children, who are the subject of this appeal, remained inappropriate for consideration of reunification throughout the pendency of this case. (T. at 70-75; 90-97).
 {¶ 6} A formal hearing was held on the agency's request for permanent custody of Joseph, Taylor, and Sean Turner on July 27, 2006. Prior to this hearing, appellant and Richard Searcy, father of a fourth child, Michael Turner, both agreed to grant legal custody of the child to the child's paternal grandmother, Beulah Searcy. The hearing then went forward regarding the remaining children.
 {¶ 7} Kristina Masten, the ongoing case worker from TCJFS testified regarding the custodial history of the children, indicating that they had been in the custody of the agency since April 26, 2005. (T. at 78) Additionally, Ms. Masten testified extensively about the specialized needs of the children. (T. at 102-105) She further testified regarding the inability to maintain the children in the same home. (T. at 105) Ms. Masten further testified regarding the willingness of the current foster parents of the children to adopt them and provide a permanent, stable home. (T. at 104; 105).
 {¶ 8} Testimony was elicited at the permanent custody hearing indicating that while appellant had completed the parent education training, she failed to adequately apply the lessons learned in the class. She had numerous opportunities to display her cognition of those lessons during visitation and repeatedly failed to do so. (T. at 33-34; 82). In fact, visits between the appellant and her children remained chaotic and never improved over the course of the case. (T. at 40). This remained true even after appellant had been taking anti-anxiety medication for some time. (T. at 41). Appellant could not bring herself to demonstrate lessons that she had been taught regarding discipline during her visits because she did not want to hurt her children's feelings. (T. at 207-208). Appellant had been informed several times that success in the case at least partially depends on her ability to apply the lessons she had been taught. (T. at 214-215).
 {¶ 9} Appellant initially complied with the requirement that she obtain a psychological evaluation; however there was a significant delay in following through with the recommendations of such evaluation. (T. at 82-84). Moreover, the results of that evaluation as addressed by the testimony of Dr. Misra indicate that due to appellant's significant long term and/or permanent deficits, that she would need round the clock assistance to be able to parent the children. (T. at 12; 29).
 {¶ 10} Appellant is renting part of a two bedroom home in Massillon, Ohio. (T. at 188). Appellant's Case Manager in Stark County, Ohio, Shameen Ahmad, confirmed that the home was appropriate for appellant and her kids and that it was clean and nicely decorated. (T. at 171).
 {¶ 11} Appellant also testified that she has obtained a source of income to help meet her children's needs. (T. at 190). Appellant applied for and is now receiving monthly social security benefits in the amount of $603.00 per month for her anxiety disability. (T. at 191). Appellant has also applied for food stamps and would receive additional social security disability income for each child. (T. at 191-192).
 {¶ 12} In accordance with her Case Plan, appellant testified she completed the required parenting classes. (T. at 194-195). Appellant's sister, Christina Hartline, and appellant's boyfriend, Mark Weisgarber, testifed that appellant is able to take care of her children by planning meals, cooking, cleaning, properly disciplining and otherwise meet the needs of her children.(T. at 152-153; 231-233). Witnesses for the TCJFS, however, testified that appellant was not able to properly discipline the children during her weekly visitations and that the visits were often chaotic and out of control. (T. at 45; 82). Appellant had weekly visitations in a small room at the agency with all four of her children at one time for approximately an hour and half each visit. (T. at 50-51).
 {¶ 13} Appellant testified that it was very difficult to control four or five small children who had not seen her for a week and who were all competing for her attention. (T. at 196). The Case Manager confirmed during her testimony that very often all of the kids were clamoring for appellant's attention when she was trying to have one-on-one time with one child. (T. at 131). Appellant testified that she knows how to discipline her kids but found it hard to act as the disciplinarian when she only saw her children once a week. (T. at 207-208).
 {¶ 14} Appellant's payee and boyfriend, Mark Weisgarber, testified that he would be able to provide assistance to appellant in the form of transportation, money, food and help with the kids if needed. (T. at 232). Likewise, appellant's sister, Christina Hartline, testified that she would be able to provide the same type of assistance to appellant when her kids were returned to her. (T. at 157-158).
 {¶ 15} Upon issuing findings of fact, the trial court found that the children could not and should not be placed with any of the parties within a reasonable time and that it was in their best interest to be placed into the permanent custody of Job Family Services. (Judgment Entry, August 1, 2006).
 {¶ 16} It is from this judgment entry appellant-mother appeals, raising the following assignments of error:
 {¶ 17} "I. THE TRIAL COURT ERRED BY NOT FULLY DISCUSSING AND MAKING AN INDEPENDENT DETERMINATION OF THE RELEVANT CRITERIA IN OHIO REVISED CODE SECTIONS 2151.414(D) AND (E) AND ALL OTHER RELEVANT EVIDENCE INDEPENDENTLY FOR EACH CHILD INVOLVED IN THE REQUEST FOR PERMANENT CUSTODY.
 {¶ 18} "II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES ABSENT CLEAR AND CONVINCING EVIDENCE THAT SUCH AN AWARD WAS IN THE BEST INTERESTS OF THE CHILDREN.
 {¶ 19} "III. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT STRIKING THE TESTIMONY OF THE CASE MANAGER THAT WAS PRESENT DURING THE TESTIMONY OF THE OTHER WITNESSES DESPITE THE COURT'S ORDER FOR A SEPARATION OF WITNESSES."
 I. II. {¶ 20} Because appellant's first and second assignments of error are interrelated, we shall address them together.
 {¶ 21} In her first assignment of error, appellant maintains that the trial court failed to discuss each of the factors set forth under the best interest test pursuant to R.C. 2151.414(D) and (E). In her second assignment of error appellant maintains that that the trial court's decision to grant permanent custody was not in the best interest of the children and was against the manifest weight of the evidence. We disagree.
 {¶ 22} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279.
 {¶ 23} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 24} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned and the parents cannot be located; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 25} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B) (1) (a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 26} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E) (1) through (16) exist with respect to each of the child's parents.
 {¶ 27} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:
 {¶ 28} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 * * * of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353 * * * of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 29} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 30} "* * *
 {¶ 31} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child."
 {¶ 32} Pursuant to R.C. 2151.414(E), the trial court specifically found: "2. On July 7, 2005, a psychological evaluation was conducted by Dr. Misra. As a result of his evaluation, Dr. Misra has concluded that Ms. McDonald possesses an IQ score of 64. This level reflects extreme intellectual deficiencies that cannot be corrected. There was no actual diagnosis identified as Misty failed to answer enough questions during the testing. 3. Misty is plagued with anxiety and paranoid feelings. She demonstrates very little ability to make appropriate day-to-day decisions. She is still married to Joseph McDonald. 4. Overall, Dr. Misra has concluded that the emotional and intellectual deficits of Ms. McDonald are permanent and will prevent her from ever safely parenting these children. She is unable to meet the emotional, nutritional, hygienic, or physical needs of these children. If she were living with them, she would require 24-hour supervision for the protection of the children. * * * 8. The parental deficits identified by Dr. Misra were clearly demonstrated during Ms. McDonald's supervised visits with her children. Family Service Aides report that visits between Ms. McDonald and her children were constantly chaotic and out of control. Although Ms. McDonald attended parent education, she showed no signs of utilizing the information presented to her. 9. It was necessary for TCJFS employees to constantly monitor the safety of the children and to direct the behavior and interaction of Ms. McDonald with the children. These visits were so chaotic that her visitation time became limited, and the children began asking to leave before the visits were completed. Ms. McDonald has missed seven visits. 10. After each visit, the Family Service Aide would discuss the visits with Ms. McDonald in an attempt to improve them. No improvements ever materialized. 11. Kristina Masten is the ongoing case worker for this family. Misty McDonald and her children have been the subjects of dependency and/or neglect investigations in three separate counties since 1999. Concerns remain the same and include Misty's inability to care for her children in every aspect. Three of her children were fathered by three separate brothers. She has never been able to provide appropriate housing, and she cannot maintain employment. 12. The testimony of Ms. McDonald only confirms the opinion of Dr. Misra. It was clear that her understanding of the needs concerning, her children exists on a very simplistic and emotional level. She demonstrates no real insight or complex thinking concerning their behavior or how to control and discipline them. She does not articulate any understanding of the need to discipline her children and is very concerned as to whether or not discipline will make her children mad at her. It is clear that the complexities of raising four children into adulthood are well beyond her capabilities. * * * This evidence supports a finding that despite diligent, reasonable efforts and planning by the Tuscarawas County Job and Family Services to remedy the problems which caused removal of the children, all parents have failed continually and repeatedly for a period of six months or more to substantially remedy the conditions causing removal. The Case Plan proposed by the Tuscarawas County Job and Family Services addressed the concerns which resulted in the removal of the children. Each element of the Case Plan had supportive services offered by the Tuscarawas County Job and Family Services to help in the completion of the Case Plan. These parents have demonstrated a lack of commitment toward their children and have failed to provide an adequate home for the children at this time and cannot do so within a year of this litigation". Judgment Entry, August 1, 2006 at 2-5).
 {¶ 33} Assuming the trial court ascertains that one of the four circumstances listed in R.C. 2151.414(B) (1) (a) through (d) is present, then the court proceeds to an analysis of the child's best interest. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 34} Appellant correctly asserts that the Eleventh District Court of Appeals has read the language R.C. 2151.414(D) in a way that requires a juvenile court to discuss each of the factors set forth under the best interest test. See In the Matter of Nicole Smith, 11th
Dist. No. 2002-A-0098, 2003-Ohio-800, ¶ 13. However, this Court has held that a trial court is not required to specifically enumerate each factor under R.C. 2151.414(D) in its decision. In the Matter of the FranklinChildren (Jan. 28, 2001), Tuscarawas App. No. 2001 AP 03 0023; In Re:Parker (Apr. 25, 2001), Tuscarawas App. No. 2000 AP 12 0096; In theMatter of the Schupbach Children (May 6, 2000), Tuscarawas App. No. 2000 AP 01-0005. See also, In re: Hershberger, 3rd Dist. Nos. 01-04-55, 01-04-61, 2005-Ohio-429; In re: Heyman (Aug. 13, 1996), Franklin App. No. 96AP-194. Nevertheless, there must be some indication on the record that all of the necessary factors were considered. Id. Furthermore, "[i]t is axiomatic that both the best-interest determination and the determination that the child cannot be placed with either parent focus on the child, not the parent." In re: Mayle (July 27, 2000), Cuyahoga App. Nos. 76739, 77165, citing Miller v. Miller
(1988), 37 Ohio St.3d 71, 75, 523 N.E.2d 846.
 {¶ 35} In the case at bar, the trial court could not consider the wishes of the children due to their ages. The custodial history of the children indicates that appellant and the children have been involved with children service agencies in several Ohio counties and in West Virginia. (T. at 85; 141). In some instances intervention was avoided because appellant and the children would move from the jurisdiction. (Id. at 144-145).
 {¶ 36} The children suffered from developmental delays ranging from bed wetting, severe temper tantrums, and aggression to difficulty walking and speaking. (Id. at 138-139). The youngest child, Sean, needed physical therapy to overcome his delays. (Id.). The seven year old, Joseph, was unable to recite the ABC's or count above thirty. (Id. at 139). Services had been provided to appellant as far back as 1999, however, appellant was not able to implement the services that were provided. (Id.). Further, appellant transferred legal custody of a fourth child, Michael Turner, to his paternal grandmother. (T. at 1-4).
 {¶ 37} Dr. Misra testified that even with treatment appellant is not likely to improve to the point where she could have adequate skills to take care of the children. (T. at 17).
 {¶ 38} While evidence was adduced that mother has made progress toward the completion of her case plan services, evidence was also presented that she has made little, if any, progress with dealing with their own mental health issues, missed visitations due to other commitments, and failed to take any responsibility for the children's removal from their home. The trial court found that, regardless of appellant's substantial compliance with her case plan, she was still not able to be a successful parent to any of her three children.
 {¶ 39} Based on the foregoing, we find that the trial court's findings that the children could not or should not be placed with appellant-mother within a reasonable time and that the grant of permanent custody was in the children's best interest were not against the manifest weight and sufficiency of the evidence. There was competent, credible evidence supporting the trial court's decision granting permanent custody of the children to TCDJFS.
 {¶ 40} Appellant's first and second assignments of error are overruled.
 III. {¶ 41} In her third assignment of error appellant maintains that the trial court abused its discretion by not striking the testimony of the TCJFS case manager, Kristina Mastin, because she was present in the courtroom after the court ordered a separation of witnesses. We disagree.
 {¶ 42} Evid. R. 615 states: "(A) Except as provided in division (B) of this rule, at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. An order directing the "exclusion" or "separation" of witnesses or the like, in general terms without specification of other or additional limitations, is effective only to require the exclusion of witnesses from the hearing during the testimony of other witnesses.
 {¶ 43} "(B) This rule does not authorize exclusion of any of the following persons from the hearing:
 {¶ 44} "(1) a party who is a natural person;
 {¶ 45} "(2) an officer or employee of a party that is not a natural person designated as its representative by its attorney;
 {¶ 46} "(3) a person whose presence is shown by a party to be essential to the presentation of the party's cause;
 {¶ 47} "(4) in a criminal proceeding, a victim of the charged offense to the extent that the victim's presence is authorized by statute enacted by the General Assembly. "As used in this rule, "victim" has the same meaning as in the provisions of the Ohio Constitution providing rights for victims of crimes."
 {¶ 48} The exclusion of witnesses from the courtroom is within the sound discretion of the trial judge, and the exercise of that discretion will not be disturbed absent clear abuse. E. g., DeRosier v. UnitedStates (8th Cir. 1969), 407 F.2d 959, 961 ; Powell v.United States (6th Cir. 1953), 208 F.2d 618, 619; cert. denied, 347 U.S. 961, 74 S.Ct. 710, 98 L.Ed. 1104 (1954).
 {¶ 49} In the case at bar, the case manager is an officer or employee of the TCDJFS and, albeit belatedly, was designated as its representative by its attorney. (T. at 127-128).
 {¶ 50} No abuse of discretion existed here for it is well settled that the prosecution is permitted to have a representative of the agency that is actually prosecuting the accused present in court to advise counsel for the government, even though that person also testifies as a witness.United States v. Martin (6th Cir. 1990), 920 F.3d 393;United States v. Wells (6th Cir. 1971), 437 F.2d 1144,1146; Schoppel v. United States (4th Cir. 1959),270 F.2d 413, 416-417; Powell v. United States, supra; State v. Remy, 4th Dist No. 03CA2731, 2004-Ohio-3630 at ¶ 74; State v.Alexander, 5th Dist. No. CT2004-0021, 2004-Ohio-6990
at ¶ 27.
 {¶ 51} Appellant's third assignment of error is overruled.
 {¶ 52} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division is affirmed.
Gwin, P.J., Hoffman, J., and Farmer, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division is affirmed. costs to appellant.