[Cite as *In re A.C.*, 2023-Ohio-602.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |  |
|---|---|---|---|
| IN THE MATTER OF: | : | JUDGES: | |
| | : | Hon. William B. Hoffman, P.J. | |
| A.C. (DOB 8-09-20) | : | Hon. John W. Wise, J. | |
| | : | Hon. Craig R. Baldwin, J. | |
| A.C. (DOB 9-11-21) | : | | |
| | : | | |
| MINOR CHILDREN | : | Case No. 2022CA00129 | |
| | : | 2022CA00130 | |
| | : | | |
| | : | O P I N I O N | |

CHARACTER OF PROCEEDING:        Appeal from the Stark County Court
of Common Pleas, Family Court
Division, Case Nos. 2021JCV01059
and 2021JCV010060

JUDGMENT:        Affirmed

DATE OF JUDGMENT:        February 28, 2023

APPEARANCES:

For Plaintiff-Appellee        For Defendant-Appellant

BRANDON J. WALTENBAUGH        BERNARD L. HUNT
Stark County JFS        2395 McGinty RD NW
402 2nd Street SE        Canton, Ohio 43720
Canton, Ohio 44702

*Baldwin, J.*

{¶1}   Appellant K.C. appeals from the September 13, 2022 Judgment Entries of the Stark County Court of Common Pleas, Family Court Division, terminating his parental rights and granting permanent custody of his children A.C. (DOB 8-09-20) and A.C. (DOB 9-11-21) to appellee Stark County Department of Job and Family Services.

### STATEMENT OF THE FACTS AND THE CASE

{¶2}   Appellant K.C. is the biological father of A.C. (DOB 8-09-20) ("A.C. 1") and A.C. (DOB 9-11-21) ("A.C. 2"). K.W. is the biological mother.[1] Appellee's initial concerns regarding A.C. 1 and A.C. 2 arose when mother was using methamphetamine while pregnant with A.C. 2.  In addition, appellee had concerns regarding the dynamic between appellant and mother, concerns regarding appellant's drug use, and concerns that A.C. 1 had been dropped "quite frequently," which appellee suspected was due to her parents being under the influence of drugs.

{¶3}   Appellee initially attempted to work a "non-court case" with appellant by putting a safety plan in place in which the maternal and paternal grandparents would supervise. However, due to the appellant's refusal to acknowledge his substance use despite positive drug screens, and continuous violations of the safety plan, the appellee ultimately sought court intervention.

{¶4}   On October 20, 2021, the appellee filed a Complaint as to each child alleging dependency and neglect in which it sought temporary custody of the children. In addition, the appellee filed a Motion for Pre-Adjudicatory Order as to each child seeking an order for the following: that appellant arrange for and proceed with a parenting

---

[1] The trial court also terminated the parental rights of K.W., who has not appealed.

assessment to be completed by the adjudicatory hearing, and follow all recommendations; that appellant receive an assessment for drug and alcohol abuse; that appellant begin any recommended drug or alcohol treatment; and, that appellant submit to a urinalysis within 48 hours of the order. The trial court granted the motion. In addition, the trial court issued a Judgment Entry ordering the appellee to take the children into shelter care custody, and scheduled an emergency shelter care hearing for October 21, 2021.

{¶5}   The emergency shelter care hearing proceeded on October 21, 2021, at which time the appellant stipulated that probable cause existed for the issuance of the emergency shelter care order and placement of the children in shelter care pending further hearing. The trial court found that removal of the children was necessary to prevent immediate harm, and that continued residence in the home would be contrary to the children's best interests. The trial court further found that the appellee had made reasonable efforts to prevent the need for placement, and ordered that the children be placed in the temporary custody of the appellee. Finally, the trial court also reaffirmed the orders for drug and alcohol assessment and drug and alcohol urine screening, and ordered visitation at the appellee's discretion.

{¶6}   The matter was set for a review hearing on November 17, 2021, and a guardian ad litem ("GAL") was appointed. The appellee worked with the appellant and prepared a Family Case Plan for each child which was filed just prior to the scheduled hearing. In addition, the GAL investigated the matter and filed a GAL Report just prior to the hearing in which she recommended that the children remain in the temporary custody of the appellee while the appellant worked his case plan services. The GAL

recommended further that the appellant needed to demonstrate the ability to maintain sobriety and comply with parenting evaluations and parenting classes.

{¶7}  The appellant failed to appear for the hearing, but counsel for mother requested discovery, and the trial court set the matter for adjudication on January 13, 2022. The appellee had investigated possible placement with relatives, but no appropriate relatives could be found. The children were therefore placed with a foster family, who ensured that their needs were met during the pendency of the case.

{¶8}  Following the November 17, 2021 hearing, the appellee undertook efforts to work with appellant on the items set forth in the Family Case Plan ("Plan".) The Plan, the goal of which was reunification, was jointly developed with and agreed to by the appellant. Items of concern that were addressed in the Plan were as follows:

{¶9}  1. Appellant was to establish paternity for A.C. 2; [2]

{¶10}  2. Appellant was to obtain and maintain stable housing that was safe, clean, and free from environmental hazards, and provide documentation showing that rent and utilities were being paid and that he was in compliance with housing agreements;

{¶11}  3. Appellant was to maintain stable employment/source of income and demonstrate his ability to meet his own needs and the needs of the children, and to provide documentation of the same;

{¶12}  4. Appellant was to ensure that he could provide for the children's basic needs at all times;

---

[2] Appellant subsequently signed A.C. 2's birth certificate, thus establishing paternity.

**{¶13}** 5. Appellant was to complete parenting evaluations and assessments at Lighthouse Family Center to determine his level of functioning and need for additional services in order to safely and successfully parent the children;

**{¶14}** 6. Appellant was to follow any and all recommendations from Lighthouse service providers, and attend and participate in all appointments;

**{¶15}** 7. Appellant was to sign a release of information to be in effect for the duration of the case.

**{¶16}** 8. Appellee was to make a referral to Lighthouse, provide any background and/or collateral information, authorize payments as ordered, and maintain contact with service providers to monitor progress;

**{¶17}** 9. Appellant was to complete a drug and alcohol assessment as ordered by the court at CommQuest Recovery Services;

**{¶18}** 10. Appellant was to remain substance free, gain insight and knowledge regarding the harmful effects of drugs and alcohol on family functioning, and provide a safe and drug free living environment for the children and ensure no person involved with drug activities are around or providing care for the children;

**{¶19}** 11. Appellant was to submit to random drug screens as requested by appellee;

**{¶20}** 12. Appellee was to engage in written and oral communication with appellant, as well as service providers, to monitor and determine progress; and,

**{¶21}** 13. Appellant had the opportunity for supervised visitation with the children for two hours two times per month.

**{¶22}** The adjudication hearing went forward on January 13, 2022 with all parties and their counsel present, as well as the GAL, and evidence was presented. The trial court found that appellant needed to complete both the parenting assessment with Lighthouse and substance assessment with CommQuest; that appellant had not signed the necessary releases of information and appellee was therefore unable to speak with service providers to monitor and determine his progress; that the children were placed with foster parents who were ensuring that their needs were met; that appellant visited the children every other week at the agency, interacted well with the children and brought them food and toys; that appellee attempted several safety plans prior to removal; that appellee sought relatives for possible placement; that the GAL was pleased with the children's placement, and would observe the parents' visit soon; and, that counsel for appellee requested the appellant be ordered to sign the releases and submit to a drug screen that day.

**{¶23}** The trial court found further that the appellee had engaged in reasonable efforts to prevent the need for placement and/or make it possible for the children to return home, and that the appellee had engaged in intensive efforts to identify and engage kinship caregivers for the children. Finally, the trial court found that the children, having previously been determined dependent, should be placed in the temporary custody of the appellee, and ordered the appellant to submit to a drug screen and sign the appropriate releases that day. A dispositional review hearing was scheduled for April 19, 2022, and a twelve-month review hearing was scheduled for September 16, 2022.

**{¶24}** The dispositional review hearing went forward on April 19, 2022. The appellant failed to appear for the hearing. He was represented by counsel. The trial court,

after hearing all the evidence, found that appellant had not complied with a parenting assessment at Lighthouse and, while appellant had completed a CommQuest assessment and was referred to a substance abuse treatment program, he had not followed through with an outpatient treatment program and was not truthful about his substance use. In addition, the appellant was not compliant with random drug screens, and needed independent housing and employment. The trial court also found that while the appellant visited the children, he was historically not on time for the visits and no-showed a number of times. Accordingly, the appellee required him to appear for the visit before the children would be transported.

**{¶25}** The GAL reported that the children were doing well in foster care and recommended that the placement continue. The trial court held that reasonable efforts were made to finalize the permanency planning in effect; that appellee had utilized intensive efforts to identify and engage appropriate and willing kinship caregivers for the children; approved and adopted the Case Plan Review Packet; and, ordered the status quo be maintained. A dispositional review hearing was scheduled for September 16, 2022.

**{¶26}** On July 6, 2022, the appellee filed a motion for permanent custody. Appellee's motion was based upon the appellant's continuous and repeated failure to substantially remedy the conditions that led the award of temporary custody to the appellee; the appellant's chemical dependency, which was so severe that he was unable to provide an adequate permanent home for the children and it was not anticipated that he could do so within one year after the court held the R.C. 2151.414(A) hearing; the appellant's failure to regularly support, visit, or communicate with the children when able

to do so; the appellant's unwillingness to provide an adequate permanent home for the children; the appellant's abandonment of the children by failing to visit or maintain contact with the children for more than ninety days; and, the appellant's unwillingness to provide food, clothing, shelter, and other basic necessities for the children. A hearing on the motion was scheduled for September 12, 2022.

{¶27} On August 16, 2022, the appellee filed an Amended Case Plan which added an additional afterborn child as a plan participant. Appellant did not jointly develop and agree with the amended plan, as he was no longer engaging in the case plan in any way.

{¶28} The permanent custody proceedings went forward on September 12, 2022. The appellant failed to appear for the hearing. He was represented by counsel. Testimony of the case worker was presented at the hearing which established that the appellant failed to complete the parenting assessments and, while he completed the substance abuse assessment with CommQuest through which the Moderate Outpatient Program was recommended, he failed to comply with the recommendation and engage in treatment. In addition, while the appellant averred that he was clean, he provided a urine drug screen on the day of his assessment that tested positive for amphetamine. Further, the appellant failed to engage in the required random drug screens. In fact, at the time of the hearing the appellant's last drug screen was from January 13, 2022, wherein he tested positive for amphetamine and methamphetamine with levels of methamphetamine that were "concerningly high." The appellant continued to refuse drug screens, was unemployed, and had no housing. Appellee sent the appellant numerous letters and called him numerous times in an effort to engage him in services, but he was "very resistive to any engagement."

{¶29} Finally, the appellant had not seen the children since March 21, 2022. Thus, the time period between the appellant's last visit with the children and the filing of the July 6, 2022 Motion for Permanent Custody was in excess of ninety days.

{¶30} Although the appellant failed to appear for the permanent custody hearing, his counsel argued that his housing was appropriate because it was structurally sound. His counsel argued further that appellant had completed the substance abuse evaluation, which was progress, and that he attended two of the three or four parenting evaluation assessments. Finally, appellant's counsel argued that appellant had visited the children prior to March of 2022. [3]

{¶31} The trial court then proceeded with the best interest portion of the proceedings.  The appellee provided the following testimony. The children had been with an agency foster home since they came into the appellee's custody on October 20, 2021, and were happy and healthy. The appellee engaged in efforts to find a kinship placement, including assessing the grandparents, sending out letters to other relatives, and going through obituaries online, but was unable to find a suitable family member with whom the children could be placed. The appellee provided evidence that the appellant's last visit with the children was on March 21, 2021, and that it did not appear that the children were bonded with appellant. The appellee submitted that the children, who are adoptable,

---

[3] The appellee contended that when the appellant did show up for visitation, the visits were chaotic. He and K.W. would bicker and snap at one another, and appellant would scratch at the sores on his face. The visits required a lot of redirection by the case worker or visitation aide.

deserve to have permanency, safety, and stability in their lives, and that permanent custody was in their best interests.

**{¶32}** The appellant's counsel cross-examined the appellee's case worker, arguing that when the appellant visited with the children they recognized him, he interacted with them, and they did not cry when he held them. Appellant's counsel called no witnesses.

**{¶33}** The GAL made a statement at the conclusion of the proceedings, submitting that it is hard to re-unify with parents who do not show up to visits and do not present with clean urines, and that do not do much of anything on their case plan but continue to use drugs. The GAL stated further that the children were happy, healthy, and well cared for by the foster family, and agreed with the appellee that permanent custody was in the best interests of the children.

**{¶34}** The trial court issued separate Findings of Fact and Conclusions of Law for each child on September 13, 2022 in which it found, *inter alia*, that the appellant had abandoned the children due to his lack of contact with them for more than ninety days, and that notwithstanding reasonable case planning and diligent efforts by the agency the appellant had failed to remedy the conditions that caused the children to be placed with the agency. The court therefore found by clear and convincing evidence that the children could not be placed with appellant within a reasonable time nor should they be placed with him.

**{¶35}** The trial court next considered the best interests of the children, and after considering all relevant factors found that the harm caused by severing any bond with the parents was outweighed by the benefits of permanence in the children's lives, found the

children to be adoptable, and found that it was in the children's best interests to grant permanent custody to appellee for purposes of adoption, terminating the appellant's parental rights.

**{¶36}** Appellant now raises the following assignment of error on appeal:

**{¶37}** "I. THE TRIAL COURT'S DECISION THAT A.C. (DOB 8-09-20) AND A.C. (DOB 9-11-21) COULD NOT BE PLACED WITH THE FATHER WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

**{¶38}** The appellant contends that because he completed his CommQuest assessment and two of his parenting evaluation appointments, had a "structurally sound" place to live, and did not appear for visits with the children while intoxicated, that the decision to terminate his parental rights and grant permanent custody to the appellee was against the manifest weight and sufficiency of the evidence. We disagree.

**BURDEN OF PROOF**

**{¶39}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). A parent's interest in the care, custody and management of his or her child is "fundamental." *Id.*, citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law

allows." *Id.* An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1).

## STANDARD OF REVIEW

**{¶40}** The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]hat measure or degree of proof that will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954); *In the Matter of: J.P.*, 5th Dist. Stark No. 2019CA00119, 2019-Ohio-4972, ¶19.

**{¶41}** A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins*, 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, ¶ 17, citing *Cross, supra*. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.

## ANALYSIS

**{¶42}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates that the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶43}** R.C. 2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that 1) it is in the best interest of the child to grant permanent custody to the agency; and, 2) that any of the following apply:

(a)     The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b)     the child is abandoned;

(c)     the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d)     the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a

consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶44}** Thus, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶45}** R.C. 2151.011(C) provides:

For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days.

**{¶46}** In the case *sub judice*, the trial court found, by clear and convincing evidence, that the appellant had no contact with the children for more than ninety days and had therefore abandoned them pursuant to R.C. 2151.414(B)(1)(b). Competent, credible evidence supports the trial court's findings. In this case, the appellee provided uncontroverted testimony that the appellant had no contact with the children from March 21, 2022 to September 12, 2022, the day of the permanent custody proceedings, a time period in excess of ninety days. Accordingly, we find no reversible error with regard to the trial court's finding of abandonment under R.C. 2151.414(B)(1)(b), and the trial court's decision that abandonment established the grounds necessary for an award permanent custody to appellee SCDJFS was not against the manifest weight of the evidence.

**{¶47}** A trial court's finding of abandonment under R.C. 2151.414(B)(1)(b) satisfies the first prong of the permanent custody test, independent of a finding under R.C. 2151.414(B)(1)(a) [Parental Placement within a Reasonable Time], allowing the court to move on to the second prong of considering whether the grant of permanent custody to the agency is in the best interest of the child. *In re A.M.*, 5th Dist. Stark No. 2013 CA 00113, 2013-Ohio-4152. Despite the fact that the appellant's abandonment of the children satisfies the first prong of the permanent custody analysis rendering a reasonable efforts determination unnecessary, we will nonetheless address the appellant's argument that the trial court erred in finding that the children could not be placed with him within a reasonable period of time, as this argument must also fail.

**{¶48}** The court must consider all relevant evidence before determining that a child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also provides that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the child cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *In re William S.*, 75 Ohio St.3d 95, 99, 1996-Ohio-182, 661 N.E.2d 738.

**{¶49}** R.C. 2151.414(E) states in pertinent part:

> In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a

reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within

one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

\*        \*        \*

(10) The parent has abandoned the child.

\*        \*        \*

(16) Any other factor the court considers relevant.

**{¶50}** As set forth above, the trial court's findings are based upon competent credible evidence. The record includes the recommendation of the guardian ad litem for the children, and the testimony of the case worker at trial. The trial judge was in the best position to determine the credibility of the witness. The trial court found that the appellee had made reasonable efforts to prevent the removal, to eliminate the continued removal, or to make it possible for the children to return home safely to appellant's home.

**{¶51}** The record supports the trial court's finding that the appellant had not shown consistent sustained progress necessary to have the children returned to his custody. In fact, he had shown very little progress, and very little interest in working the care plan. He continued to engage in drug abuse. It did not appear that he had been able to apply any behavioral changes, and despite being offered numerous services, he was unable or unwilling to mitigate the concerns that led to the children's removal. We find that there was sufficient and substantial competent evidence that the appellant failed continuously and repeatedly to substantially remedy the conditions that caused the children to be placed outside the home. This, combined with the appellant's chronic drug use and his abandonment of the children, satisfies the requirements of R.C. 2151.414(E). We

therefore find that there is competent and credible evidence to support the trial court's determination that the children could not be placed with appellant within a reasonable time nor should they be placed with appellant.

**{¶52}** The second phase of the permanent custody proceedings involves a determination regarding the best interests of the children. R.C. 2151.414(D) mandates that the trial court must consider all relevant factors, including but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶53}** The focus of the "best interest" determination is upon the children, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist. 1994).

**{¶54}** This Court has held that a trial court is not required to specifically enumerate each factor under R.C. 2151.414(D) in its decision. *In re: Turner*, 5th Dist. Tuscarawas No. 2006-CA045, 2006-Ohio-6793, ¶ 34. Nevertheless, there must be some indication on the record that all of the necessary factors were considered. *Id.*

**{¶55}** In this case, the trial court made findings of fact regarding the children's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in

determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re: Mauzy Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

**{¶56}** A review of the trial court's decision illustrates that it considered the best interest factors. The court found that when the appellant did visit with the children the visits were not successful, and found that the children had not bonded with appellant. The trial court further found that the children, who reside together in the same foster home, are healthy and happy, and have excellent bonded relationships with their foster parents and all persons in their foster homes. In addition to the testimony, the trial court considered the reports of the GAL. The trial court concluded the children's need for legally secure placement could not be achieved without awarding permanent custody to the appellee. Upon review of the record, it is clear that the record supports the trial court's finding that granting the motion for permanent custody is in the children's best interest.

**{¶57}** As already noted, in addition to abandoning the children, the appellant failed to remedy the problems that initially caused the removal of the children from the home. Very little has changed with respect to appellant's life choices since this case began. He failed to acknowledge his drug use issues, failed to demonstrate any meaningful change in his lifestyle during the pendency of the case, and failed to attend the April 19, 2022 dispositional hearing as well as the September 12, 2022 permanent custody hearing.

**{¶58}** Upon review of the record on appeal and the findings and conclusions of the trial court, we conclude the grant of permanent custody of A.C. (DOB 8-09-20) and

A.C. (DOB 9-11-21) to appellee SCJFS was in the children's best interest and did not constitute an error or an abuse of discretion under the circumstances presented.

## CONCLUSION

{¶59} Based upon the foregoing, we find that the trial court's decision awarding permanent custody of the children to appellee SCJFS was in the children's best interest, was based upon competent, credible evidence, and is not against the manifest weight or sufficiency of the evidence.

{¶60} The evidence contained in the record supports the trial court's judgment. We therefore overrule the appellant's sole assignment of error, and affirm the decision of the Stark County Court of Common Pleas, Family Court Division.

{¶61} Appellant's sole assignment of error is overruled.

By: Baldwn, J.

Hoffman, P.J. and

Wise, John, J. concur.