[Cite as *In re G.R.*, 2023-Ohio-1442.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF G.R. | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| MINOR CHILD | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | |
| | : | Case Nos. 2022CA00146 |
| | : | 2022CA00147 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2021 JCV 232

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      May 1, 2023

APPEARANCES:

For Plaintiff-Appellant Father

KATHALEEN S. O'BRIEN
116 Cleveland Ave. NW, Suite 303
Canton, Ohio 44702

For Plaintiff-Appellant Mother

JEREMY FOLTZ
122 Central Plaza North
Canton, Ohio 44702

For Defendant-Appellee

BRANDON J. WALTENBAUGH
Stark County JFS
402 2nd Street SE
Canton, Ohio 44702

Guardian ad Litem

CHARLA OSTERGREN
110 Central Plaza S. Fourth Fl.
Canton, Ohio 44702

*Baldwin, J.*

{¶1} Appellants appeal from the October 17, 2022 Findings of Fact and Conclusions of Law and the October 17, 2022 Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, terminating their parental rights and granting permanent custody of their child, G.R. (DOB 1-31-21), to appellee Stark County Department of Job and Family Services ("SCJFS").

## STATEMENT OF THE FACTS AND THE CASE

{¶2} Appellant J.T. is the biological mother of minor child G.R. Appellant T.R. is the child's biological father.

{¶3} G.R. was born on January 31, 2021 positive for Methamphetamines and THC. SCJFS became involved with the family on February 9, 2021. The appellants continued to test positive for drugs, and SCJFS filed a complaint for dependency on March 11, 2021. G.R. was removed from the appellants and placed with SCJFS the same day.

{¶4} A shelter care hearing was held on March 15, 2021, at which time the trial court granted emergency temporary custody of G.R. to SCJFS. Counsel was appointed for both J.T. and T.R., a Guardian Ad Litem ("GAL") was appointed, and a pretrial was set for April 7, 2021.

{¶5} On April 6, 2021, SCJFS filed an initial case plan, the goal of which was reunification. The concerns for the family were that J.T. had used drugs while pregnant, J.T. tested positive for Methamphetamines during G.R.'s birth, and both J.T. and T.R. continued to test positive for drugs. In addition, G.R. was born with Methamphetamines and THC in his system. Further, J.T. and T.R., who both tested positive for

Methamphetamines, admitted that they used drugs while caring for G.R. The initial case plan provided that J.T. and T.R. were to attend services through CommQuest, and to attend meetings and engage in community support. Their goal was to become and remain sober. The case plan provided that J.T. and T.R. would attend substance abuse treatment, would sign releases and attend consistently, would submit to random drug screens, and would become sober. The case plan stated that it was jointly developed with SCJFS, J.T. and T.R., that J.T. and T.R. agreed with the plan, and that a copy of the plan had been provided to them on April 1, 2021.

{¶6} The April 7, 2021 pretrial hearing went forward as scheduled, and the matter was set for an evidentiary hearing on May 18, 2021.

{¶7} On April 21, 2021, SCJFS filed an amended complaint alleging dependency, neglect and abuse. On May 18, 2021, J.T. stipulated to the finding of abuse, as did T.R. The trial court found G.R. to be abused, and deleted the allegations of dependency and neglect. The matter proceeded to disposition, and the trial court granted temporary custody of G.R. to SCJFS. In addition, the trial court approved and adopted the case plan.

{¶8} On September 9, 2021, SCJFS filed a second case plan review packet, the goal of which was reunification. The plan noted that J.T. and T.R. were loving parents who were making progress, but also noted that they "continue[d] to struggle with being clean for drug use". A disposition review hearing was held, following which the trial court found that SCJFS had made reasonable efforts and, as of that date, there were compelling reasons to rule out a request for permanent custody to SCJFS. The trial court approved and adopted the amended case plan.

{¶9} J.T. and T.R. made some progress in the treatment of their respective drug addiction issues. SCJFS filed a notice for extended visitation on December 28, 2021, and a motion to return child with protective supervision and to extend protective supervision on December 29, 2021. A hearing was scheduled on February 10, 2022 on the motions.

{¶10} SCJFS filed a third case plan review packet on February 10, 2022 with the stated goal of reunification. A hearing was conducted at that time during which the trial court heard evidence that J.T. was addressing her addiction issues and testing clean. T.R. was incarcerated at the time of the hearing. Custody of G.R. was returned to his parents with protective supervision to SCJFS extended to September 11, 2022.

{¶11} J.T. relapsed in March and, due to her continued use of Methamphetamines and amphetamines, SCJFS filed an ex-parte post dispositional motion for temporary custody of G.R. on March 21, 2022.  T.R. was still incarcerated. On March 22, 2022, a shelter care hearing was conducted at which time the trial court found probable cause to remove G.R. The court also found that SCJFS had used reasonable efforts to prevent the removal.

{¶12} SCJFS filed a fourth case plan on August 9, 2022. The concerns for the family at that time were that J.T. and T.R., both of whom had tested positive for Methamphetamines, had not remained sober over time and were inconsistent in treatment. A hearing was conducted the same day, during which evidence established that both J.T. and T.R. had relapsed in their respective addictions. Based upon the evidence presented, the trial court found that J.T. tested positive for Methamphetamines and amphetamines in March, 2022, and positive for Methamphetamines in April; and, both J.T. and T.R. tested positive for Methamphetamines and amphetamines in June.

The court found further that there were no negative screens for either parent, and that both parents continued with substance abuse. In addition, the court found that the parties were still not in compliance with the case plan color-code random drug tests. Specifically, the court found that J.T. missed twenty-seven (27) color code appointments and showed up for three, testing positive for Methamphetamines and amphetamines at all three; and, found that T.R. missed twenty (20) color codes appointments and showed up for one, at which he tested positive for Methamphetamines and amphetamines. Finally, the court found that SCJFS had made reasonable efforts and that, as of August 9, 2022, there were no compelling reasons to preclude a request for permanent custody. The trial court approved and adopted the case plan, and status quo was ordered.

{¶13} SCJFS filed a motion for permanent custody on August 12, 2022, and a notice of hearing was issued scheduling the motion for hearing on October 11, 2022. T.R. was served by certified mail, and J.T. was personally served by a court appointed special process server. J.T. filed a motion to extend temporary custody on October 5, 2022 seeking time "to address her substance abuse issues and continue her therapeutic counseling," and "complete her case plan in its entirety."

{¶14} The hearing on SCJFS's motion for permanent custody proceeded as scheduled on October 11, 2022. J.T.'s motion to extend was argued, during which she submitted that she had been actively involved in her case plan, that she had gone to AVO and submitted to drug screens at AVO, and that she was making progress. Counsel for SCJFS argued that the appellants had already received one extension, and that they had not complied with what was necessary to prove sobriety. The motion was taken under advisement.

**{¶15}** The matter proceeded, and the ongoing case worker testified as follows. The initial concerns regarding G.R. were that he was born positive for Methamphetamines and marijuana. In addition, both J.T. and T.R. also tested positive for Methamphetamines at or around that time. G.R. was removed from the appellants on March 11, 2021, emergency temporary custody of G.R. was granted to SCJFS on March 15, 2021 following a shelter care hearing, an initial case plan was filed on April 6, 2021, and temporary custody was granted to SCJFS on May 18, 2021 following an evidentiary hearing.

**{¶16}** Initially, J.T. and T.R. made progress on their case plan. Although T.R. was incarcerated, G.R. was placed with J.T. for an extended visit in December, 2021. J.T. had appropriate housing, and G.R. stayed with her. On February 10, 2022, custody of G.R. was returned to J.T. and T.R. with protective supervision.

**{¶17}** Issues developed with regard to J.T.'s housing and she was, initially, proactive in trying to remedy the problem. However, despite the fact that she appeared to be maintaining her sobriety, she tested positive for Methamphetamines two times in March, 2022.  On March 21, 2022, SCJFS filed an ex parte pick up order, and G.R. was returned to SCJFS custody. He remained in the temporary custody of SCJFS until the trial court's October 17, 2022 Findings of Fact and Conclusions of Law and Judgment Entry awarding permanent custody to SCJFS.

**{¶18}** The case plan requirements for both J.T. and T.R. provided that they were to receive individual counselling for mental health, individual counselling for substance abuse, and to undergo random drug screens. J.T. initiated counselling with AVO. In April, 2022, SCJFS requested that J.T. complete random color-code drug screens two times

per week. SCJFS is open for such testing from 8:30 a.m. until 5:00 p.m. in an effort to accommodate those who work. J.T. either declined to submit to the random color code drug screens, failed to appear, or tested positive. Although J.T. received drug tests at AVO, they were at her regularly scheduled appointments, and were not administered randomly. Thus, J.T. could plan her drug use around the AVO appointments when she knew she would be tested. Despite this fact, J.T. tested positive in June, July, and August, 2022.

{¶19} Further, J.T.'s AVO assessment strongly recommended that she participate in the intensive out-patient program ("IOP") through CommQuest. J.T. declined to enroll in the IOP. As of the time of the October 11, 2022 hearing, J.T. had failed to maintain sixty (60) days of sobriety.

{¶20} T.R. was also to complete an AVO assessment and submit to color-coded random drug screens. He was inconsistent with his AVO testing and counselling. In addition, he declined to submit to the random color-code drug screens, and also declined to enroll in the IOP. While T.R. tested negative for drugs in May and August, 2022, he admitted to his counselor that he was using Methamphetamines in July, 2022, and he tested positive in June, 2022.

{¶21} During the course of the case, J.T. and T.R. had weekly visits with G.R. While they were generally consistent in showing up for their visits, J.T. missed some visits and T.R. would visit at least once per month. They were appropriate with G.R. during their visits and, to the best of the case worker's knowledge, at no time did their sobriety appear to be in question during the visits.

**{¶22}** The case worker testified that although J.T. and T.R. had maintained consistent housing and employment at the time of the October 11, 2022 hearing, neither parent had been able to maintain consistent sobriety as evidenced by their continued positive drug tests. Further, they both refused to comply with the random color-code drug testing, and refused to enroll in the recommended IOP.

**{¶23}** The risk to G.R. was his parents' drug use and abuse, and that risk had not been reduced.

**{¶24}** The case worker testified that the appellants failed to complete their case plan services. She testified further that, due to the appellants' continued drug abuse, an extension of time would not be beneficial because they were both unable to remain sober, both refused to do the IOP program, and neither had made progress since the last extension.

**{¶25}** The parties' substance abuse counselor also testified. Her testimony generally supported that of the case worker. The counselor testified that while both appellants attended the AVO substance abuse counseling, the recommendation was for them to undergo not only individual substance abuse counselling, but also individual mental health counselling and enrollment in the IOP program. While they underwent the substance abuse counseling, they declined individual mental health counseling and declined to enroll in the IOP program. Appellee SCJFS rested its case.

**{¶26}** Appellant J.T. renewed her motion for an extension of temporary custody at the conclusion of the first phase of the hearing on the appellee's motion for permanent custody. The crux of the issue was that, while the appellants attended substance abuse counseling at AVO and the scheduled drug tests associated therewith, they failed to

submit to the color code random drug tests, they refused to engage in the IOP program, and they refused to engage in mental health counseling. The appellants argued that they were making some progress, and asked for the extra time in order to continue their positive trajectory. The appellee countered that while the appellants appeared for their substance abuse counseling at AVO and submitted to the scheduled drug tests, any negative results were not necessarily persuasive of sobriety because they knew and could plan for those tests. They consistently refused to submit to the color-code random drug tests, and therefore could not prove that they had maintained sobriety for at least sixty (60) days. The trial court, again, took J.T.'s motion for extension of temporary custody under advisement.

{¶27} The appellants presented no witnesses.

{¶28} The trial court proceeded with the best interest portion of the hearing. The case worker testified that G.R. was doing very well with his foster family. She testified further that, while the appellants' visits with G.R. demonstrated a loving relationship, G.R. needed the consistency of a stable home. She testified that because the appellants had not made progress on what the agency recommended and the consistency of what was needed for reunification, it was not in G.R.'s best interest to extend temporary custody, but rather, was in his best interest for permanent custody to be awarded to SCJFS.

{¶29} In addition to the testimony of the case worker, the GAL filed numerous reports during the pendency of the matter. On October 4, 2022, she filed a report in which she recommended that, due to the fact that neither parent can maintain sobriety or be consistent with counseling, permanent custody be granted to SCJFS.

{¶30} The appellants, again, presented no witnesses.

**{¶31}** Based upon the evidence presented, the trial court found that G.R. had been in the temporary custody of SCJFS for a period greater than twelve (12) months of a consecutive 22-month period and, notwithstanding reasonable case planning and diligent efforts by SCJFS, both J.T. and T.R. failed to remedy the conditions that caused G.R. to be placed with SCJFS. The trial court further found that J.T. and T.R. placed G.R. at substantial risk of harm two or more times due to alcohol and drug abuse and after a journalized case plan or court order has required treatment, and that J.T. and T.R. rejected or refused to participate in treatment two or more times.

**{¶32}** In addition, the trial court found that G.R., who was almost two years old at the time of the hearing, had no developmental issues or delays, nor did he have any behavioral issues. He has half-siblings through his father, T.R. The trial court further found that G.R. had been with the same foster family from the time of the safety plan until he went back to J.T. and T.R. for an extended visit. He returned to the foster family in March of 2022, and has remained there. The foster family, who met all of his needs, consisted of a mother, father, and foster siblings. G.R. bonded with the foster family, and does well in the home. The foster family are interested in adopting G.R. if that were to become an option.  The foster family communicates with the paternal side of G.R.'s family and has initiated contact with them. The trial court found that while there was no denying that G.R. has a bond with J.T. and T.R., the benefit of permanency and consistency for G.R. outweighed any harm in severing the parental bond.

**{¶33}** Consequently, the trial court found by clear and convincing evidence that G.R. could not be placed with either J.T. or T.R. within a reasonable time, nor should he be placed with them.

**{¶34}** The trial court found further that the harm caused by severing any bond with the parents was outweighed by the benefits of permanency in G.R.'s life, found him to be adoptable, and found that it was in his best interest to grant permanent custody to SCJFS for purposes of adoption.

**{¶35}** Appellant J.T. filed a timely appeal and set forth the following sole assignment of error:

**{¶36}** "I. THE TRIAL COURT ERRED IN REFUSING TO EXTEND THE DEPARTMENT'S TEMPORARY CUSTODY OF G.R. SO THAT HIS MOTHER COULD COMPLETE HER CASE PLAN."

**{¶37}** Appellant T.R. also filed a timely appeal, and set forth the following two assignments of error:

**{¶38}** "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDSCJFS) AS SCDSCJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶39}** "II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDSCJFS) AS SCDSCJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

### *APPELLANT J.T.*

**{¶40}** Appellant J.T. submits that the trial court erred in refusing to extend the agency's temporary custody of G.R. so that she could have extra time to work her case plan, essentially requesting a continuance of the permanency hearing. We disagree.

### STANDARD OF REVIEW

**{¶41}** "The right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). A parent's interest in the care, custody and management of his or her child is "fundamental." *Id.*, citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist. 1991). Therefore, parents "must be afforded every procedural and substantive protection the law allows." *Id.*

**{¶42}** "A request by a parent for an extension of temporary custody in the situation *sub judice* is, in practical effect, a request to postpone or continue the pending permanent custody proceeding." *In the Matter of L.D.*, 5th Dist. Licking No. 18 CA 0023, 2018-Ohio-3380, ¶ 55. A trial court's decision to grant or deny a motion for continuance is a discretionary decision that will not be reversed absent an abuse of discretion. *State v. Unger,* 67 Ohio St.2d 65, 423 N.E.2d 1078, 1079 (1981). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Steiner v. Custer* (1940), 137 Ohio St. 448 [31 N.E.2d 855] [19 O.O. 148]; *Conner v. Conner* (1959), 170 Ohio St. 85 [162 N.E.2d 852]

[9 O.O.2d 480]; *Chester Township v. Geauga Co. Budget Comm.* (1976), 48 Ohio St.2d 372 [358 N.E.2d 610] [2 O.O.3d 484]." *Blakemore v. Blakemore*, 5 Ohio St. 3d 217, 219, 450 N.E.2d 1140, 1142 (1983).

## ANALYSIS

**{¶43}** The issue of a trial court's denial of a request for continuance in the context of permanent custody was addressed by this Court in *In the Matter of R.M., Jr.,* 5th Dist. Muskingum No. CT2017-0057, 2018-Ohio-395:

We recognize that a parent has a fundamental liberty interest in the care, custody, and management of his or her child and an essential and basic civil right to raise his or her children. *In re Murray*, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990). That right, however, is not absolute. "The natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed." *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

To determine whether a trial court abused its discretion in denying a motion for a continuance, we consider the following factors: 1) the length of the delay requested; 2) whether other continuances have been requested and received; 3) the inconvenience to witnesses, opposing counsel, and the court; 4) whether there is a legitimate reason for the continuance; 5) whether the defendant contributed to the circumstances giving rise to the need for the continuance; and 6) other relevant factors, depending on the unique facts of each case. *In re P.T.*, 5th Dist. Stark No. 2011CA00200, 2012–Ohio–1287, ¶ 17, citing *State v. Unger* 67 Ohio St.2d 65, 67–68, 423

N.E.2d 1078 (1981); *State v. Holmes*, 36 Ohio App.3d 44, 47–48, 521

N.E.2d 479 (1987).

*Id.* at ¶¶ 23-24.

**{¶44}** J.T. requested that SCJFS's temporary custody be extended, essentially asking for a continuance of the permanency hearing. While no specific period of time is set forth in J.T.'s motion, the case worker was asked whether a five-month period of time would be beneficial. She testified that, while it is possible that a parent could become completely compliant with their case plan in five months, an extension of time would not be beneficial to G.R., as in this case the appellants had a number of drug screens come back positive, had not attended most of the random tests, had not done the recommended IOP, and "had not done it in our last extension." The trial court found that no amount of additional time would have enabled the appellants to successfully complete their case plans.

**{¶45}** Further, the J.T.'s conduct – that is, the continued use of drugs, failure to submit to the random color-code drug screens, failure to enroll in the IPO program, and failure to obtain mental health counseling – is what gave rise to the need for the continuance. We find that the trial court did not act unreasonably, arbitrarily or unconscionably when it denied J.T.'s motion.

**{¶46}** Accordingly, appellant J.T.'s sole assignment of error is overruled.

### *APPELLANT T.R.*

**{¶47}** Appellant T.R. submits that the trial court erred when it found by clear and convincing evidence that grounds existed for an award of permanent custody of G.R. to

the agency, and that it was in G.R.'s best interest to award permanent custody to the agency. We disagree.

## STANDARD OF REVIEW

**{¶48}** An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B)(1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]hat measure or degree of proof that will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954); *In the Matter of: J.P.*, 5th Dist. Stark No. 2019CA00119, 2019-Ohio-4972, ¶19.

**{¶49}** A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Adkins*, 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, ¶ 17, citing *Cross, supra*. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.

## ANALYSIS – PERMANENCY & PLACEMENT

**{¶50}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates that the trial court schedule a hearing and provide notice upon the filing of a motion for permanent

custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶51} R.C. 2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that 1) it is in the best interest of the child to grant permanent custody to the agency; and, 2) that any of the following apply:

(a)     The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b)     the child is abandoned;

(c)     the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d)     the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has

been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶52} Thus, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child. In this case, the trial court found that R.C. 2151.414(B)(1)(d) applied, as G.R. had been in the temporary custody of SCJFS for twelve or more months of a consecutive twenty-two-month period.

{¶53} In addition, the court must consider all relevant evidence before determining that the children cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E). The statute also provides that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See *In re William S.*, 75 Ohio St.3d 95, 99, 1996-Ohio-182, 661 N.E.2d 738.

{¶54} R.C. 2151.414(E) states in pertinent part:

In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1)    Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2)    Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

*          *          *

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

*          *          *

(16) Any other factor the court considers relevant.

**{¶55}** In this case, the trial court found by clear and convincing evidence that SCJFS engaged in reasonable case planning and diligent efforts, but that the appellants failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home – that is, they continuously and repeatedly failed to achieve and maintain sobriety. We find, therefore, that there is sufficient evidence to support the trial court's decision. The appellants could not maintain sobriety for even

sixty (60) days. They continuously failed or refused to submit to random drug tests as required by their case plans. In addition, they knew that when they appeared for substance abuse counseling a drug screen would be administered, and still failed a number of those screens. Finally, they both failed or refused to undergo the intensive counseling through IPO as required by their case plan. As such, there is sufficient evidence upon which to support the decision of the trial court.

{¶56} The trial court's findings are based upon competent credible evidence. The record includes the recommendation of the guardian ad litem for the child, as well as testimony from the case worker and the parties' substance abuse counselor at the permanency hearing. The trial judge was in the best position to determine the credibility of the witness. The trial court found that the appellee had made reasonable efforts to prevent the removal, to eliminate the continued removal, or to make it possible for the child to be returned safely to appellants' home.

{¶57} The record supports the trial court's finding that the appellants had not shown consistent sustained progress necessary to have the child returned to their custody. In fact, they failed to submit to the color-code random drug screens as required by their case plan, they failed to submit to the IPO program with CommQuest as required by their case plan, and they failed to submit to mental health counseling as required by their case plan. Most significantly, they continued to engage in illegal drug abuse, testing positive for Methamphetamines and amphetamines at drug screens that occurred at their regularly scheduled AVO appointments. They were unable apply behavioral changes on a consistent basis, and despite being offered numerous services were unable or unwilling to mitigate the concerns that led to G.R.'s removal.

**{¶58}** The appellants argue that they had made some progress on their case plan. However, "[w]e have recognized that even where a parent has participated in his or her case plan and completed most or all of the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement. *See, e.g., In re Pendziwiatr/Hannah Children,* Tuscarawas App.No. 2007 AP 03 0025, 2007–Ohio–3802, ¶ 27." *In re Matter of L.D.,* 5th Dist. Licking No. 18 CA 0023, 2018-Ohio-3380, ¶ 34. Thus, the fact that the appellants complied with some portions of their case plan does not alter our analysis.

**{¶59}** We therefore find that there was sufficient and substantial competent evidence that the appellants failed continuously and repeatedly to substantially remedy the conditions causing the G.R. to be placed with SCJFS. This, combined with the appellants' chronic drug use, satisfies the requirements of R.C. 2151.414. We therefore find that there is competent and credible evidence to support the trial court's determination that G.R. could not be placed with appellants within a reasonable time nor should they be placed with appellants.

## ANALYSIS – BEST INTEREST

**{¶60}** The second phase of the permanent custody proceedings involves a determination regarding the best interests of the children. R.C. 2151.414(D) mandates that the trial court must consider all relevant factors, including but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶61}** The focus of the "best interest" determination is upon the children, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist. 1994).

**{¶62}** This Court has held that a trial court is not required to specifically enumerate each factor under R.C. 2151.414(D) in its decision. *In re: Turner*, 5th Dist. Tuscarawas No. 2006-CA045, 2006-Ohio-6793, ¶ 34. Nevertheless, there must be some indication on the record that all of the necessary factors were considered. *Id.*

**{¶63}** In this case, the trial court made findings of fact regarding the children's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re: Mauzy Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

**{¶64}** The trial court's decision indicates it considered the best interest factors. The court found that the harm caused by severing any bond with the appellants was outweighed by the benefits of permanence in G.R.'s life. The trial court further found that the child is healthy and happy, and has excellent bonded relationships with his foster parents and all persons in the foster home. The trial court concluded the child's need for

legally secure placement could not be achieved without awarding permanent custody to appellee SCJFS. In addition to the testimony, the trial court considered the reports of the GAL. Upon review of the record, it is clear that the record supports the trial court's finding that granting the motion for permanent custody is in G.R.'s best interest.

**{¶65}** As already noted, the appellants failed to remedy the drug abuse problems that initially caused the removal of G.R. from the home. Very little changed with respect to the appellants' drug use since their case began. While they made some progress towards sobriety, they continuously went back using Methamphetamines and amphetamines, having failed to achieve sobriety for even sixty (60) days. Further, they failed to attend most of the required color-code random drug tests, they failed to enroll in the IPO program, and they failed to undergo mental health counseling, all of which were required by their case plans.

**{¶66}** Upon review of the record on appeal and the findings and conclusions of the trial court, we conclude the grant of permanent custody of G.R. to appellee SCJFS was made in consideration of the child's best interest, and did not constitute error under the circumstances presented. Based upon the foregoing, T.R.'s assignments of error I and II are both overruled.

**CONCLUSION**

**{¶67}** We find that the trial court did not abuse its discretion when it denied appellant J.T.'s motion for an extension of temporary custody. Further we find that the trial court's decision to award permanent custody of G.R. to appellee SCJFS was in G.R.'s best interest, was based upon competent, credible evidence, and is not against the manifest weight or sufficiency of the evidence. The evidence contained in the record supports the trial court's judgment. We therefore overrule the appellants' assignments of error, and affirm the decision of the Stark County Court of Common Pleas, Family Court Division.

By: Baldwin, J.

Gwin, P.J. and

Wise, John, J. concur.